FILED _____ ENTERED
LOGGED _____ RECEIVED
JUN 2 0 2018
AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **SAHR BOCKAI** | * | |
| Plaintiff, | * | |
| v. | * | Civil No. PJM 18-417 |
| **RUVANNI INC. ET AL.,** | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

On February 9, 2018, Sahr Bockai filed a Complaint against Ruvanni, Inc. ("Ruvanni") and its President Ruth Macauley-Barrett ("Defendants"), alleging breach of contract, unjust enrichment and misrepresentation. Bockai filed two Returns of Summons on March 19, 2018, showing service of the summons and Complaint on both Defendants on February 21, 2018. Neither Ruvanni nor Macauley-Barrett answered or entered an appearance in the case. Accordingly, on April 18, 2018, the Clerk of the Court, at the behest of Bockai, entered a Default in his favor. ECF No. 8. Bockai has now filed a Motion for (Default) Judgment (ECF No. 9), seeking $200,000 in compensatory damages, as well as $100,000 in punitive damages.

For the following reasons, Bockai's Motion for Judgment (ECF No. 9) is **GRANTED IN PART** and **REVISED IN PART**.

# I. FACTUAL AND PROCEDURAL HISTORY

On or about April 13, 2016, Bockai entered into a Joint Venture and Profit Sharing Agreement (the "Agreement") with Ruvanni for the wholesale purchase and resale of 1,000 carat rough diamonds. Complaint ¶ 9, ECF No. 1. The general terms of the Agreement were that Bockai would wire Ruvanni, via Ruvanni's authorized representative Macauley-Barrett, $33,000.00 to purchase the diamonds. *Id.* ¶¶ 11-12. Macauley-Barrett, who represented that she had significant expertise and experience in this type of transaction, would then resell the diamonds for a significant profit. ¶¶ 14-15. Macauley-Barrett purportedly told Bockai that a buyer for the diamonds had already been arranged before he entered into the Agreement, and that Bockai was "guaranteed to receive roughly $200,000.00 in profit in return" for his $33,000.00 investment. *Id.* ¶¶ 13, 15.

The Agreement required Ruvanni to purchase and resell the diamonds within 60 days of the execution of the Agreement, during which time Ruvanni would return Bockai's investment and earned profits. ¶¶ 21-22; *see also* the Agreement ¶ 2, ECF No. 9-2. If Ruvanni failed to purchase the diamonds within the 60-day period, Bockai was entitled to demand, in writing, the return of his investment of $33,000.00, which would be reimbursed within 30 days. Complaint ¶¶ 26-27, ECF No. 1; *see also* the Agreement ¶ 4, ECF No. 9-2.

Bockai's investment never bore fruit. He alleges in fact that neither Macauley-Barrett nor Ruvanni ever had a potential buyer for the diamonds, and that Macauley-Barrett intentionally misrepresented the risk of the transaction "as a means of inducing [him] into executing the Agreement and wiring the funds." Complaint ¶ 19, ECF No. 1. Bockai purportedly contacted Ruvanni via email on February 13, 2017, requesting the return of his investment due to

Ruvanni's failure to perform its duties under the Agreement, but Ruvanni refused to return the money. *Id.* ¶¶ 28-29.

On February 9, 2018, Bockai filed the present Complaint, alleging breach of contract, unjust enrichment, and misrepresentation. *Id.* On March 19, 2018, he filed two Returns of Summons showing that a Summons and Complaint were served personally on Macauley-Barrett on February 14, 2018, as to both herself individually and as the corporate representative of Ruvanni. ECF Nos. 4 & 5. Neither Macauley-Barrett nor Ruvanni has ever entered an appearance in the case. On April 12, 2018, Bockai filed a Motion for Clerks Entry of Default (ECF No. 7), which the Clerk of the Court entered in favor of Bockai on April 18, 2018 (ECF No. 8). On May 18, 2018, Bockai subsequently filed the present Motion for (Default) Judgment (ECF No. 9), seeking $200,000 in compensatory damages and $100,000 in punitive damages.

## II. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."

A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *See Baltimore Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. 2011). The Fourth Circuit has a "strong policy that cases be decided on the merits." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993). Nevertheless, default judgment may be appropriate where the "adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).

3

The Court takes as true the well-pleaded factual allegations in the Complaint as to liability, but is not obligated to do so as to damages. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). In order to determine the appropriate damage award in a default case, the court may hold a hearing to prove damages, but, again, it is not required to do so; it may rely instead on "detailed affidavits or documentary evidence to determine the appropriate sum." *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)); *see also Laborers' Dist. Council Pension v. E.G.S., Inc.*, Civ. No. 09-3174, 2010 WL 1568595, at *3 (D. Md. Apr. 16, 2010) ("[O]n default judgment, the Court may only award damages without a hearing if the record supports the damages requested."); *DirecTV Inc. v. Yancey*, 2005 WL 3435030, at *2 (W.D. Va. Dec. 12, 2005) (concluding that plaintiff "presented sufficient evidence to support its claim for damages, costs and fees by way of uncontradicted affidavits").

### III. ANALYSIS

Here, taken as true, Bockai's allegations clearly establish liability on the part of Ruvanni for breaching the Agreement. Along with the language of the Agreement itself, they indicate that Bockai entered into a contract with Defendants to purchase diamonds, that he performed his contractual obligations by wiring Defendants $33,000, and that Defendants breached the contract when they failed to return Bockai's investment to him within 30 days of his written demand. Accordingly, the Court finds that Bockai has established a valid claim for breach of contract and unjust enrichment.

#### A. Compensatory and Punitive Damages

In his Motion for (Default) Judgment, Bockai seeks $200,000 in compensatory damages, the amount that he claims he would have received had his investment proceeded as anticipated.

4

The Court declines to award that amount. It finds that Bockai is only entitled to those damages that he has actually suffered, i.e. the $33,000 he invested in the deal that has not been returned to him. Any additional damages would be entirely speculative, since Bockai, whatever the assurances of Macauley-Barrett, was never guaranteed a $200,000 return on his investment. Accordingly, the Court finds that Bockai has only submitted sufficient evidence to support a damage award of $33,000, plus—as will be addressed below—prejudgment interest on that amount.

Bockai also seeks $100,000 in punitive damages. None will be awarded. It is well established in Maryland that "punitive damages cannot be awarded in a pure breach of contract case, although they are recoverable in tort actions arising out of contractual relationships where actual malice is present." *Sims v. Ryland Group, Inc.*, 37 Md.App. 470, 378 A.2d 1, 4 (Md.Ct.Spec.App. 1977). Maryland courts define "actual malice" as "conduct of the defendant characterized by evil motive, intent to injure, ill will, or fraud." *Darcars Motors of Silver Spring, Inc. v. Borzym*, 379 Md. 249, 841 A.2d 828, 837 (Md.2004) (quoting *Owens–Illinois, Inc. v. Zenobia*, 325 Md. 420, 601 A.2d 633, 652 (Md.1992)). Thus, "'negligence alone, no matter how gross, wanton, or outrageous, will not satisfy [the] standard [of actual malice].'" *Darcars Motors of Silver Spring, Inc.*, 841 A.2d at 837 (alteration in original) (quoting *Owens–Illinois, Inc.*, 841 A.2d at 837). Bockai has not shown that he is entitled to punitive damages. However wronged he may feel, his allegations in no way rise to the level of "actual malice."

Additionally, the Court notes that Bockai does not make a demand for punitive damages in his Complaint, which was what Defendants were given notice of when served with the

5

Summons and Complaint.[1] Complaint ¶¶ 39, 44, 58, ECF No. 1. This limits Bockai's ability to recover punitive damages. Federal Rule of Civil Procedure 54(c) limits the judgment that may be entered based on a party's default: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Thus, where a complaint specifies the amount of damages sought, the plaintiff is limited to entry of a default judgment in that amount. "When a complaint demands a specific amount of damages, courts have generally held that a default judgment cannot award additional damages . . . because the defendant could not reasonably have expected that his damages would exceed that amount." *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 132 (4th Cir. 2000). Because Bockai did not made a demand for punitive damages in his Complaint, in addition to not having alleged sufficient facts to show that Defendants acted with an "evil motive, intent to injure, ill will, or fraud," the Court declines to award punitive damages.

**B. Prejudgment Interest**

Although the Court does not award Bockai punitive damages, it will grant him prejudgment interest. Prejudgment interest "is allowable as a matter of right when 'the obligation to pay the amount due had become certain, definite, and liquidated by a specific date prior to judgment so that the effect of the debtor's withholding payment was to deprive the creditor of the use of a fixed amount as of a known date.'" *Buxton v. Buxton*, 770 A.2d 152, 165 (Md. 2001). The right to prejudgment interest "arises under written contracts to pay money on a day certain, such as bills of exchange or promissory notes, in actions on bonds under contracts providing for the payment of interest, in cases where the money claimed has actually been used by the other party, and in sums payable under leases as rent." *Id.* Because the Agreement specifies that

---

[1] In the *ad damnum* clause of the Complaint, Bockai requests "a Judgment in [his] favor against the Defendant[s] . . . in an amount in excess of $75,000.00, plus interest, costs, and attorney's fees together with such other and further relief deemed appropriate."

Defendants owed Bockai the return of his investment on a certain day, Bockai is entitled to prejudgment as a matter of right.

"While not bound by state law, the court may choose to apply the interest rate provided for by state law." *Hylind v. Xerox Corp.*, 749 F. Supp. 2d 340, 351 (D. Md. 2010), *aff'd in part, rev'd in part and remanded*, 481 F. App'x 819 (4th Cir. 2012) (upholding application of Virginia pre-judgment interest rate) (citing *Quesinberry v. Life. Ins. Co. of N. Am.*, 987 F.2d 1017, 1031 (4th Cir.1993). The legal rate of interest in Maryland is 6% per annum. Md. Const. art. III, § 57.

Accordingly, the Court will award Bockai simple prejudgment interest at the rate of 6% per annum on the $33,000 compensatory damages award, which began to accrue on March 15, 2017, thirty (30) days after Bockai made his written demand to Defendants for the return of his investment. By the Court's calculation to date (June 19, 2018), this amounts to $2,500.77 (461 days x .06 = 2,500.77).

### C. Attorney's Fees

The parties' Agreement also states that if "any party hereto default[s] in any of the covenants and terms hereof, the defaulting party shall pay all costs and expenses including reasonable attorney's fees . . . . In any suit or action and on any appeal thereof, the prevailing party shall be awarded attorney's fees and courts [sic] costs." Agreement ¶ 4, ECF No. 9-2. Because this action falls squarely within this provision of the Agreement, the Court will award Bockai reasonable attorney's fees.

To determine whether an attorney's fees are reasonable, courts typically use the principles of the well-known lodestar method as a guide. *Friolo v. Frankel*, 373 Md. 501, 504–05, 819 A.2d 354, 356 (Md. 2003) (holding generally that "the lodestar approach is ordinarily the appropriate one to use in determining a reasonable counsel fee"). The lodestar amount is the

"reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). An hourly rate is reasonable if it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 412 (D. Md. 2014) (quoting *Blum v. Stenson*, 465 U.S. 886, 890 n.11 (1984)).

In Appendix B to its Local Rules, this Court has established rates that are deemed reasonable for lodestar calculations. *Id.* (citing *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 509 (D. Md. 2000)). Plaintiffs are expected to provide all documentation necessary for the Court to make a lodestar determination as to the hours reasonably expended, including but not limited to declarations establishing the hours expended by counsel, broken down for each task performed. *Saman*, 2013 WL 2949047, at *7; Local Rule 109.2; Appendix B to the Local Rules.

Counsel for Plaintiff has submitted sufficient documentation of the fees and costs incurred in the form of a detailed billing statement. This statement indicates that counsel billed 25.2 hours total on this matter, and also specifies the hours billed by each professional. John L. Doran, Esq., who has been practicing law since 2014 and is admitted to the state and federal courts of Maryland, incurred $1,145.50 in fees for 7.9 hours of work (at a rate of $145 per hour). Doran's colleague, Justin Michael Hollimon, Esq., who was admitted to the bar in 2013 and is also admitted to practice in state and federal courts in Maryland, incurred $1,870.50 in fees for 12.9 hours of work (at a rate of $145 per hour). Doran and Hollimon worked with two paralegals, M. Greenberg and M. Castro, who billed $484 in fees for 4.4 hours of work (at a rate of $110 per hour). The total in attorneys' fees thus amounts to $3,500.

Per Appendix B, lawyers admitted to the bar for five (5) to eight (8) years may reasonably bill $165-300 per hour, and those admitted to the bar for less than five (5) years may reasonably bill $150-225. Paralegals and law clerks may reasonably bill $95-150 per hour.

Given that the rates billed by each individual in this matter comports with the rates provided for by the Local Rules, the Court is satisfied that the fees sought are reasonable and awards Bockai $3,500 in attorney's fees.

## IV. CONCLUSION

For the foregoing reasons, Bockai's Motion for Judgment (ECF No. 9) is **GRANTED** in the total amount of $39,000.77 against Ruvanni and Macauley-Barrett jointly and severably. This total reflects $33,000 in compensatory damages, $2,500.77 in pre-judgment interest, and $3,500 in attorney's fees. Post-judgment interest shall accrue at the recognized federal rate, beginning June 19, 2018 until the judgment is satisfied. A separate Order will **ISSUE**.

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

June 19, 2018